May it please the court, counsel, Judge Fischer, Judge Hardiman, and Judge Stapleton, my name is Jeff Dorman, and I'm here representing the appellant in this matter, Al Fromm, who has accompanied me here today to counsel table. I would appreciate two-minute rebuttal time if I may. That request will be granted. Thank you, Your Honor. This is a case involving Mr. Fromm, who was a court security officer in the Federal Courthouse in Williamsport, Pennsylvania. He was hired in February, 1998. He performed his duties very well, and we'll get into a little bit more detail about that in a bit. In approximately January, 2001, following a report that was requested by the Judicial Conference, the United States Marshal Service, which contracted with MVMInc. to provide the court security. I'm sorry to interrupt, Mr. Dorman. We're familiar with the facts, and as you know, Judge Fischer has already authored an opinion involving quite similar issues, so. Fair enough. The trial judge in this case granted summary judgment to the defendants basically as a result of two matters. One was accepting an argument that Mr. Fromm did not show evidence that he could perform the essential functions of the job. The trial judge found that only vague assertions had been made to that effect by Mr. Fromm. The trial judge did not address an exhaustion argument that had been made on summary judgment. The trial judge did address due process and found that the process that had been supplied was sufficient. I'd like to address the essential functions first in this case. Before you get to essential functions, I'm, as far as the employer is concerned, MVM, in your reply brief, you say, on page seven, you say, quote, affidavits of Fromm's superiors at MVM, evidence that he was able to meet all of the progress, all of the program requirements in spite of his handicap. Yes. Now, I understand that your evidence on the first element, that is, whether he has a disability, is that he was regarded by his employer as being disabled. Correct. Now, I want to know what evidence, in your reply brief, you say the affidavits of his he was able to do everything that was required despite his disability, and indeed he'd been doing it for years, and we were happy with him, et cetera. Now, what evidence is there in the record that that is all a bunch of baloney, and what they really thought was that he had an impairment that substantially impaired his ability to hear? It's really more of a legal matter than a factual matter, Your Honor. Yes, I admit that the MVM employees did make those statements. They provided affidavits to that effect. The legal issue involved in this case is whether or not MVM can be shielded by saying, we just acted because the United States Marshal Service told us to act. If the actions of the United States Marshal Service are found to be discriminatory in this case, it's our position that MVM can't just shield itself from that by saying, we just followed what they did. There is another piece of evidence that's involved in this. And that relieves you of the ability, it relieves your client of the ability, I'm sorry, of the responsibility and the burden of proving he's disabled. Correct. He was regarded as disabled is what our position is in this case. I would also note that there is evidence in the record that when the initial audiological report came out, the medical review in January, I believe it was, 2002, that a recommendation was made that Mr. Fromm be permitted to retake a hearing examination after a 14-hour period of quiet. When Mr. Fromm approached his MVM superior concerning that, and this is in the record and in the appendix, his MVM superior's response basically was, that's not going to happen. So MVM affirmatively did not permit Mr. Fromm to undergo the testing then that had been recommended by the United States Marshal Service in this case. Concerning the ability to perform the essential functions of the job, we did provide record evidence from the two judges that Mr. Fromm was tasked to provide security for in Williamsport, Judge McClure and Judge Muir, nine of his fellow CSOs, the head of the Social Security Administration Office in the Williamsport Federal Court, along with other Social Security employees, the head of the FBI office. Mr. Dorman, now isn't one of the essential functions of the job, after the Miller report was adopted, to be able to perform the duties without hearing aids? Your Honor, I think that that's questionable. The Sixth and the Ninth Circuits have both held that when you're bringing such a discriminatory charge about a function, that you don't take into consideration the medical qualification that's being challenged to begin with. That's also been addressed in the Almond case, which is out of the Middle District in Georgia. Unfortunately, there is only a Westlaw site to that case, but I can provide it to you. It is 2000 Westlaw 2904023 that came down September 28, 2007, ironically, a few days after our principal brief was filed in this case. And the court, the district court there, decided to follow the Sixth and the Ninth Circuit that the plaintiff does not bear the burden of proving qualifications as to the job function addressed by the allegedly illegal, illegal qualification standard. The plaintiff's burden is to show, excuse me, show that he was qualified absent, basically that he was otherwise qualified. Did you ever challenge? I mean, you have, there are some procedural difficulties with this case, to say the least. Yes, Your Honor. Did you ever specifically challenge the Miller Report? No. And its findings? No. However, we would also note in this case that even though these standards came up in January, I believe it was 2002, or January 2001, excuse me, maybe it was 2002, I apologize, January 2001, they were not included as part of the contract between MVM Inc. and the United States Marshal Service until December 2002, which was after Mr. Fromm was terminated. And Ms. Skeldon, who was the, excuse me, I'm looking for her exact title here, the Contracting Officer, she testified, and this is in the record, that the contract that was in force at the time of Mr. Fromm's termination allowed him to take the test with a hearing aid. It was not until after his termination that these requirements in the contract between the Marshal Service and MVM actually came into place in the contract in December 2002. Ms. Skeldon also admitted that as the Contracting Officer, she had the overall and primary responsibility for administration of the contract. So basically we're saying her word as far as that contract goes should be law in this case. She's the one who decides. And she said that under the contract that was in place, Mr. Fromm was permitted to take the hearing examination with hearing aids. In this case he was not permitted to do that. As I was saying concerning the being otherwise qualified, and the brief sets this forth and it's based upon deposition testimony in this case that's in the appendix, with a number of officials at the Federal Courthouse in Williamsport who basically commended Mr. Fromm's work and that he was capable. There is the Bynum case out of the District Court for D.C. 462 F. Supp. 2nd. 9 that found that that type of evidence from the supervisors was sufficient to show that the CSO was otherwise qualified to perform the job. I would also point out that there was actually a case that went to trial in Texas. A decision came down from the Southern District of Texas in 2008 in the Ruiz case, R-U-I-Z. The site to that is 594 F. Supp. 2nd. 738 that found that the case went to trial on these issues. And a jury found in favor of the CSO and awarded damages. And the trial court refused to overturn that particular verdict. Mr. Dorman, do you concede that Judge Fisher's opinion for this court in the Wilson case precludes your constitutional claim? No, I do not. And that's because I think it is distinguishable on several facts that are involved in this. The whole gist of due process is that you are given that opportunity and that it is meaningful. And the court did find the due process in these cases is a prudential due process, meaning that futility can be an exception to it. As we've set forth in great detail in the brief, every available method that Mr. Fromm had to him was denied to him. Basically, our argument is, and these are facts that, at least from a reading of the opinion in the Wilson case, were not in the Wilson case. Whether they had been presented to the court, I do not know. But some of the factors that are involved are the contract language itself, that the decision is solely by the Judicial Protective Services of the United States Marshal Service. If that's the case, and there is no discretion there for anybody, and there are no appeal rights set forth any place, how can there have truly been any meaningful due process here to be followed? We understand the Wilson decision in this case, the providing Mr. Fromm with the test results, telling him that he was medically disqualified as a result thereof, and giving him an opportunity to produce results of his own from his own physician. We understand that that is the due process that was addressed in the Wilson case. Our point is that... Your client had those opportunities. He did have that opportunity, yes, Your Honor. He did have that opportunity, Your Honor. We cannot dispute that he had that opportunity, except for the one factor that I mentioned earlier on, which was that the initial January 2002 medical review form had the recommendation of taking the test with 14 hours of silence, basically retaking it. And when Mr. Fromm approached his site supervisor, I believe it was, might have been the district supervisor for MVM, he was told, no, that's not going to happen. We're not going to do that. Let me ask you one other question, Mr. Dorman. You've argued, assuming I understand it correctly, that the decision not to discriminate is non-delegable. MVM can't be off the hook by saying, well, the Marshal Service made us do it. Correct. I understand that argument, then. But what about the Marshal Service? How do you keep them in when it appears you did not exhaust your administrative remedies? Well, Your Honor, that's another matter. Concerning the exhaustion of administrative remedies in this case, first of all, it was not addressed by the trial court. So, but we did argue it somewhat in our briefs. But the trial court issued its decision without ever addressing the exhaustion argument. Well, we can affirm for any reasons. I understand that, Your Honor. Basically, as I indicated, the processes, the administrative processes that might theoretically have been available were, in fact, not available. Avenues through MVM, the contract, I'm sorry I'm out of time. May I continue with my answer, please? Thank you very much. The contract that was in effect, as far as any methods or administrative procedures through MVM, Inc., says that the United States Marshal Service basically has the discretion. And anything that happens with MVM, Inc., any alternative dispute procedure, anything like that, doesn't matter. The United States Marshal Service doesn't have to abide by that. Ms. Skelton. That trumps the CFR and the administrative remedies provided in 29 CFR section 1614.05, et cetera, et cetera. And we don't know what would have happened had those been pursued because we know the uncontradicted evidence in the record is that they were not pursued. Again, Your Honor, we would point out that basically the regulations also provide that Mr. Fromm should be made aware of what is available to him. And he was not made aware of what was available to him by the appellees when this decision was made. And I would just point out also that he attempted the EEO procedure here, and he was told there's nothing that we can do concerning the medical requirement itself. Yes, we can look at the paperwork and make sure maybe procedurally it was done correctly, but we can't look at the medical decision itself. He attempted to go through the EEOC, and they said, we can't do it. We can't help. You have to go through the EEO process, which was denied to him in this case. He attempted to file appeals to MVM, Inc., with copies to the Marshal Service. MVM, Inc. sent those appeals along to the United States Marshal Service. There was never any formal response to it. Basically, our argument is, is that Mr. Fromm attempted every avenue that he knew of that was available to him, and each one of those avenues he was shot down, not for any substantive reasons. He was just told, we can't do it. All right. Mr. Dorman, we'll have you back on rebuttal. Thank you. Ms. Goetzel. Good afternoon, Your Honor. It's Katherine Goetzel for Appellee, MVM, Inc. Now, as Judge Stapleton alluded to a few minutes ago, MVM did argue before the trial court to obtain summary judgment that there was no evidence that it ever regarded Mr. Fromm as unable to work as a CSO, and therefore, he was not covered by the Americans with Disabilities Act as an individual with a disability. Now, the record evidence shows that MVM did not regard Mr. Fromm's hearing loss as disqualifying him from working as a CSO. Then why did you fire? Mr. Fromm was terminated because the marshals disqualified him from working on the court security officer contract, and once MVM got that order, they were no longer able to continue employing him as a court security officer. They looked to see if there were other positions available in Pennsylvania that Mr. Fromm would be able to work in, and there were no other positions. The marshals service, I mean, your brief seemed pretty clear to me that MVM said he was fine. If MVM had the final word, you would have been happy to keep him on. Isn't that right? That is correct, but once... But you're saying that the party calling the shots, namely the marshals service, required you to fire him. Why? No, actually, Your Honor, I'm not saying that the marshals service required MVM to fire Mr. Fromm. I'm saying that the marshals service required MVM to remove Mr. Fromm from the court security officer contract. Okay, but if there was another position available, you might have been able to move him. Certainly, if he'd been qualified for another position. All right, but why was he removed? The facts of this case are that he was either a CSO or he wasn't working. That's correct in the circumstances of this case. So he's out on the street because somebody else regarded him as disabled and you executed the order. Isn't this a non-delegable duty? Even if you felt your client felt its hands were tied, the case law, I think, tells us it's a non-delegable duty not to discriminate, doesn't it? Well, Your Honor, you're assuming that what the marshals service did was discriminatory and MVM did not believe that it was. It was, from MVM's perspective, within the marshals service prerogative to create the medical standards after Dr. Miller had done his extensive review of the court security officer job and come up with the requirements that court security officers needed to meet to work in that position. Assume for a minute they're wrong. Isn't this a non-delegable duty? If the marshals service regarded him as disabled and that violated the federal law, doesn't MVM have to suffer the consequences of that? I don't think that they are required to violate their contract by keeping him working as a CSO when the contract says if you don't abide by our order, then the hours that he works will not be paid for. And even if the marshals had discriminated against him and MVM obviously didn't agree that he was not able to work as a CSO, I think that their duty under the ADA is fulfilled by looking for another position for him that he would be able to work in. I don't think that the ADA requires an employer to continue to keep someone on the payroll when there is no work for them to do. There was work for them to do and according to your own brief, he was doing it quite well for a lengthy period of time. The contract between the marshals and MVM does not allow MVM to keep Mr. Fromm in the CSO position once after... I thought they said they're not paying you for that. You could have kept them there, but the marshal service would not have paid for it. He was no longer qualified to work on the court security officer's contract. Didn't your client get a letter from the marshals saying, if you keep him on as a CSO, we will not pay you for that? Did that read that in the record? It also said that he needs to be removed immediately from performance under the contract and that a replacement package needs to be submitted, I believe, within two weeks, which means that a new candidate for the CSO position needs to be submitted. So then if a new candidate is submitted, then keeping Mr. Fromm on for a position that the marshal says that he's not qualified for would have an additional position on the contract over and above what's required and someone else would be doing the work that Mr. Fromm had been doing and Mr. Fromm would not be doing the work and MVM would be required to pay him for that? I don't think that's what the ADA requires, Your Honor. My time is actually up. Anything else? If not, we'll call on Mr. Green. Thank you, Your Honor. Good afternoon. May it please the Court. Eric Fleisig, Green, with the Justice Department, representing the federal appellees. I'll start with a couple of clarifications that I think came up. Keep your voice up, Mr. Green. I'm sorry. A couple of points that came up during my fellow counsel's argument. The first is with regard to exhaustion. I mean, it's not disputed here that Mr. Fromm did not contact the EEO counselor or the agents, file a complaint with the agency as the Code of Federal Regulations requires. And as this Court held in Wilson, plaintiff must make a clear and positive showing of futility before he can overcome that hurdle to bringing suit under the Rehabilitation Act. There's an allegation that Mr. Fromm was not provided adequate notice that he had to undertake these remedies. 29 CFR 1614-105A2 allows for an extension of the normal 45-period timeline to file with an EEO counselor in the case where there's no notice provided. At best, that would be an argument for tolling, not for futility or for overcoming exhaustion in its entirety. And there's no question on this record that Mr. Fromm did receive notice from the EEOC when he contacted the EEOC and attempted to join the Federal defendants to his EEOC complaint. But doesn't the admission by the EEO counselors that they don't review the substance of medical determinations essentially make this futile? No, Your Honor. I mean, among other things, I'd note that Fromm has even before this Court continued to press the argument that he should have been afforded, for example, a quiet period before his testing was undertaken. I mean, compliance with these procedures for the testing are things that an EEO counselor or certainly the agency itself could satisfy if the matter were brought to them in the first instance. There are a number of requirements that the exhaustion doctrine is meant to further. I mean, it's not simply to allow what a plaintiff perceives as an error to be corrected. It allows the courts to have the benefit of agency expertise through an investigation by the agency, its judicial economy, by allowing the agency to develop the record in the first instance. It allows for conciliation and settlement. It essentially lets the agency clean house before the matter is aired before a public courtroom. And that, those interests, none of them are served by allowing plaintiffs to come directly to court as they have in this case. As to the merits of the Rehabilitation Act claim, I would note in the first instance there was a brief colloquy about whether the proper challenge here is to whether the plaintiff is otherwise qualified leaving aside the hearing standard or whether the plaintiff is otherwise qualified considering the hearing standard. That contention, as Judge Fischer noted, was not raised in the district court. And the bona fides of the underlying hearing standard, which is what is at issue in the Ninth and Sixth Circuit cases that plaintiff is adverting to, was never pressed here. As the district court noted and relied upon in its decision, Mr. Fromm has never challenged that the essential requirements of the CSO position include these various hearing requirements and that the tests that Mr. Fromm indisputably failed measured those essential hearing requirements. That was what the district court explained was fatal to Mr. Fromm's Rehabilitation Act claim and we would argue should be affirmed by the district court. So you're saying he never challenged the hearing requirements? Correct, Your Honor. There was no dispute about either the actual requirements of the position or the ability of the testing frequencies that the marshal services implemented to accurately measure the ability to take that job. In his brief, he's citing Strathey and Wilson and he's arguing that this is overbroad. Isn't he? So why hasn't he? Well, certainly. And if he could back that up with any facts that had been adduced in the district court record, that would be a different matter. Well, I think the facts he's adduced are, it's undisputed he was successfully performing the job for a period of years. Well, no. I mean, with respect, what you have is the testimony or sort of written statements of a few individuals or a number of individuals stating they'd never seen any problems with his performance and that he's a good court security officer. They don't state that they had seen him adequately here for the position. And you have to keep in mind that what these position requirements are implemented for is not for the run-of-the-mill day-to-day requirement. I mean, what the CSO does on a daily basis. It's for the situation where there is an emergency in a courtroom or at a screening point or something along those lines where the particular requirements at that heightened instance are what is the hearing needed. I guess I appreciate that. If the government wanted to pass a regulation that said, you know, we need CSOs to have perfect hearing or whatever perfection is defined as, or we want pilots to have 20-20 vision, right, fine. What I find incredibly perplexing about this case is you're saying that someone can perform the job with a hearing aid, but you don't let them take the test with the hearing aid. I don't understand that. That sounds like one of the most arbitrary, irrational regulations I've ever heard of. Well, Your Honor, I mean, and again, if the hearing guidelines had been contested, the evidence here would show what it has shown in other cases. For example, the Amond case on appeal in the 11th Circuit where the court upheld the business necessity defense the government had asserted for these very hearing standards, which is when there's an emergency, there are many instances or causes for a hearing aid to fail. And the idea is that the residual or natural hearing that a court security officer has in those instances must be adequate to meet the needs of the position. So if there is something like device interference, battery failure, dislodgement, misplacement in the ear canal, all of these would render the hearing aid ineffective. And why do you let someone perform the job wearing the defective, what you've just said is inadequate and defective? Well, the point is that we only allow CSOs who have adequate natural hearing as well. They must pass the hearing aid standards. But if someone has adequate natural hearing, why in the world would they be wearing a hearing aid? Because, I mean, the hearing standards do allow for some degree of hearing loss, and we don't require perfect hearing. We require hearing that is adequate for the needs of the CSO position. And if the CSO wants to supplement that hearing ability with the hearing aid, we have no problem with that. It's simply that they need to be able to ensure that they can hear adequately, even if something goes wrong with the hearing aid. But the crux of your argument here today is that none of these issues were joined properly below. That's absolutely right. I mean, we're talking about a business necessity defense here, and that was never, the bona fides of the standards were never pressed before the district court. And obviously, I could, you know, again, I'd refer you to the Allman decision in the 11th Circuit. That's one that does deal with this issue. But the issue wasn't properly joined here. And as to the due process question, Wilson squarely speaks to that, as Judge Stapleton asked, and I think as my brother counsel concedes, the process that was afforded here, which is being notified of the medical guidelines and that you appear to not satisfy those guidelines, being offered an opportunity to afford independent physician evidence that you do meet those guidelines, and then having those assessed by another government physician, is the same process that was provided in Wilson. And that case is indistinguishable from this one. I would make one other note with regard to the way the testing is administered here. There's been a suggestion that testing under the contract originally allowed for testing with a hearing aid, and as the district court noted on page 32 of the appendix, the actual way the hearing standards work is if you have a hearing aid, you are allowed to be tested with the hearing aid, but you must also be tested without the hearing aid for the reasons we've been discussing earlier, which is you want to make sure the hearing isn't degraded when the hearing aid is in, and you also want to make sure the hearing is sufficient when the hearing aid is out. As we note on page 17, footnote 5 of our brief, that was never contested below. It's suddenly appeared on appeal, and in fact, there's nothing in the record that disputes that. These statements of Deborah Skeldon that were adverted to by appellant don't say that you have to be only tested with your hearing aid. They simply say what the contract says, which is hearing aid testing is allowed, but that further testing is required. And that further testing is with unaided hearing. I'm still troubled by the past performance issue. Why doesn't that raise an issue of material fact? I mean, do we have to find that Bynum and Ruiz were wrongly decided, that Skirsky was the installer, and the question was whether climbing was an essential function. The employer said climbing is an essential function, but yet the record showed that he was able to perform the job without climbing. Why isn't that a jury question? Well, Your Honor, again, I think you're welcome to look at the evidence as it was presented here. I would suggest that none of that evidence disputes what we are talking about here, which is that Mr. Fromm was not able to adequately hear for the needs of the caught security officer position as that is measured by the CSO hearing standards. And the reason is, again, that those standards are not meant simply for the day-to-day activities. They're intended to measure the hearing requirements when the hearing is needed most at times of crisis in a courtroom. And as, I mean, this is, you know, I'd be happy to provide further authority for the notion that an employer doesn't need to wait for an accident to happen in order to implement standards that are heightened. I mean, that's essentially what you have here. So Bynum and Ruiz must be wrong then, under your argument? When you refer to Ruiz, are you referring to the district court? The Texas case? Well, Your Honor, I mean, that was obviously a different record than you have here, and in fact, the business necessity defense was hotly disputed in that case, and the government lost that case at a jury trial. But again, the bona fides of the hearing requirement was hotly contested there, and there was a great deal of testimony on both sides in that respect. It's not the case we have here. Must there are any further questions? Anything else? Thank you, Mr. Green. Thank you, Your Honor. Mr. Dorman? Thank you. Just to address a couple of points that were made, Judge Hardiman, in addition to what you pointed out about the letter from the Marshal Service to MVM, that they basically said, yes, remove him, we want a replacement package, but they also said, if you keep him on, we're not going to pay him. So I don't believe he had to be removed. I think that the obligation to pay him just may have shifted to MVM Inc. Along those lines- They might have put MVM in a Hobson's Choice situation, where they either the anti-discrimination law, or they keep him on and have to eat the cost. Exactly, Your Honor. And we- What about counsel for the government's argument? I mean, it seems to be a barrier that you need to get over here. Did you join the issue below regarding the bona fides of the hearing standard? How can- show us where you did that. Your Honor, I believe- Your Honor, I believe that it was raised, and it's raised through the legal argument. So it's more of a legal argument than a factual argument. Whether these are really essential functions as a legal matter that you look at, that the court looks at, or whether they measure the otherwise qualified by the other qualifications, I think it's a legal question. Certainly by raising the fact that this was discriminatory to begin with, and that he was terminated as a result of it, I think, joins the issue also. If I can just point out a couple other things in my final 25 seconds. Your Honor, your Honors, I noticed that at least two of you are wearing glasses today. In this contract- I have contacts, Sid. And you have contacts. And if I had to take the test without the contacts, I'd fail. Corrected vision. But you're not required to under this contract. What is the difference between hearing and glasses? I would submit that the vision is very important to a court security officer also. If the glasses fall off, if they break, especially in a struggle, it doesn't matter. Well, but where did you challenge that, though? That's the very issue you didn't challenge. Again, I think it's a legal issue. I think there's an argument here that- No, you need to make a factual record that this hearing issue is all bunk. I mean, the upshot of the government's argument is on a day-to-day basis, you really don't need to have a hearing that's that great because, fortunately for all of us, not much goes on in the courtroom except what we're doing today in the courthouse. But those moments of urgency, I mean, they want to set a high standard. Don't you have to challenge the legitimacy or the rationality of that high standard and make a record as happened in Ruiz and Bynum as to why that's discriminatory? Your Honor, we did bring into the record in this case the contract and the requirements that do discuss hearing and they discuss vision. And we did make the argument concerning that about trying to distinguish between these two senses for a court security officer. And in our opinion, at least, it makes no sense to distinguish between the two of them. Let me go back to where I started from, and that is whether your client has shown that he was regarded by his employer as being disabled. It seems to me that what you're saying is because they fired him or let him go, that they regarded him as unable to meet the CEO requirements. And it seems to me you're making the assumption that inability to meet the CSO requirements is equivalent to a disability under the Act. No, Your Honor, I'm not saying that at this point. I think that the law is fairly clear on it that you, that that's not sufficient to show just the CSO position. What you need to show is a class of jobs or a broad range of jobs. I believe it's... How have you shown that they believed he was disabled? I think if you look at, first of all, if you look at other cases, including Allman, and if you look at the second medical review form in this case, July 25, 2002, one of the things, it mentions that he has significant hearing loss. It says about his ability to hear soft sounds, distinguished speech. It then describes it as, quote, severe hearing loss in one ear. And again, I would point out, we're just talking one ear here. I'm talking about the marshal service now. Yes. I'm asking about the employer. You say his employer regarded him as disabled. Your Honor, I think, again, I think it's a non-delegable issue. Sometimes in the law we use extreme examples to make the point. If I had a contract, say I'm a franchise, I have a franchise restaurant, and I make a contract with some company. And they decide to come up with a requirement saying, we don't want any female employees. You get rid of your female employees or you got to pay them yourself. So I, under the contract, get rid of my female employees. I do not believe that that's permissible discrimination under the law. And that's basically what happened in this case. We believe that they told him... Who has an extraordinary need. And we don't believe, based on the evidence, that that need is met. Now, that's not contracting out anything. And you say, I mean, this is not a situation, he's got to show that he's disabled. And you agree, I understand you agree, that if the mere fact that they thought he could not pass the CSO test does not mean they regarded him as disabled, right? I agree with that. And the point I was making about that is that the medical review form goes even further. And it refers to these as essential law enforcement functions. Not simply CSO functions, law enforcement functions. And our argument, and there's case law supporting it, including the Allman case, that law enforcement is a sufficiently broad range of jobs that you can be regarded as. There are also cases that cite a similar language in the medical review forms that have found, come to that same finding. But the fact of the matter in this case concerning the contracting Judge Stapleton is that MVM Inc. didn't have to contract with the Marshal Service. They didn't have to agree to these terms. They could have said, no, we don't like this. Find somebody else to do it. But you're telling me there's nothing wrong with the terms. I mean, why should they turn the client down when you say the CSO standards are not equivalent to disability? But we have argued from the outset in this case that he should have been permitted to take the test with the hearing aid. So we have joined the issue about whether that standard is appropriate. That's been one of the gists and centers of this case, is that he should have been permitted to take the test with the hearing aid. OK, Counselor. Thank you. Thank you. The case is well argued. We'll take the matter under advisement. Thank you.